**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0737-25

IN THE MATTER OF THE
ESTATE OF BETTY SIMON,
deceased, THE VALERIE B.
ALPER TRUST, VALERIE
ALPER, LUCAS ALPER,
HEATHER ALPER, HERMAN
ZELL, MARSHA ZELL, FARAH
ZELL, SANDRA ZELL, and
SAM ZELL,

     Plaintiffs-Respondents,

v.

RENEE WOLFSON, individually
and as Co-Trustee of THE
QUALIFIED TERMINABLE
INTEREST TRUST and
RESIDUARY TRUST OF THE
LAST WILL AND TESTAMENT
OF RICHARD SIMON and as
Attorney in Fact for BETTY SIMON,
JOSEPH WOLFSON, individually,
and as Manager of JMRV ASSOCIATES
and BETTY SIMON TRUSTEE, LLC,
WOLFSON FAMILY QUALIFIED
PERSONAL RESIDENCE TRUST,
DAVID WOLFSON, Trustee, BETTY
SIMON TRUSTEE, LLC, WILLIAM

WOLFSON, individually, and
JENNIFER WOLFSON, individually,

    Defendants-Appellants.

_____

Argued April 21, 2026 – Decided May 18, 2026

Before Judges Susswein and Chase.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. 135201.

David A. Castaldi argued the cause for appellants (Jacobs & Barbone, PA, attorneys; David A. Castaldi, on the briefs).

Richard M. King argued the cause for respondents (KingBarnes, LLC, attorneys; Richard M. King and Marisa J. Hermanovich, on the brief).

PER CURIAM

In this probate matter, defendants Renee, Joseph, William, and Jennifer Wolfson; the Wolfson Family Qualified Personal Trust; David Wolfson as Trustee; and the Betty Simon Trustee, LLC appeal a September 16, 2025, Chancery Division order: (1) denying their motion to disqualify Richard M. King as counsel; and (2) denying their motion to quash subpoenas issued by plaintiffs the Valerie B. Alper Trust; Valerie, Lucas, and Heather Alper; and

2

Herman, Marsha, Farah, Sandra, and Sam Zell.  After reviewing the record in light of the governing legal principles, we affirm.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which we need only briefly summarize.  The dispute arises from transactions following the death of Betty Simon, who, along with her husband, Richard Simon, created several entities to manage their real estate business.  The couple had four children:  Jacob Simon (deceased), Valerie Alper, Renee Wolfson, and Marsha Zell.  The Valerie B. Alper Trust (VBAT) was established by Richard Simon.

There is a history of litigation between the present parties dating back to a 2008 action alleging breach of fiduciary duties owed to the VBAT.  See Alper, et al. v. Simon, et al., No. ATL-C-07-08 (Ch. Div. June 22, 2011).  The current probate action was initiated in November 2024 by King, acting as trustee of the VBAT, seeking to probate Betty Simon's will, obtain an accounting of the estate, and challenge a $1 deed transfer of Betty Simon's Boardwalk residence (the Boardwalk property) to Renee and Joseph Wolfson's children, which was later sold for $975,000 without proceeds going to the VBAT or other beneficiaries.

A-0737-25

During a June 26, 2025, deposition of plaintiff Herman Zell, defense counsel learned that King's prior law firm—Ford, Flower & Hasbrouck—represented defendants Renee and Joseph Wolfson in the 2008 litigation involving the same parties. On June 30, 2025, defense counsel sent a letter to King raising the conflict issue. King responded that the Wolfsons waived any conflict in a 2016 order when he was appointed trustee of the VABT. Defense counsel disagreed, arguing that the waiver was made only with respect to King's appointment as trustee and did not contemplate future litigation.

On July 18, 2025, plaintiffs served defendants with eleven subpoenas seeking various testimony and documents related to the Simon family entities. On July 24, 2025, defendants filed a motion to disqualify King based on RPC 1.9(a), Duties to Former Clients. They also moved to quash the subpoenas, claiming the discovery requests were overbroad and burdensome.

Plaintiffs responded that the 2016 order appointing King as trustee constituted a valid waiver of any alleged conflict, executed by sophisticated parties represented by independent counsel. They also argued that the matters were not substantially related, as the 2008 litigation concerned property in Absecon, while the current action involves the Boardwalk property—Betty Simon's residence before her death—and estate accounting. Plaintiffs also

A-0737-25

asserted that the Wolfsons' delay in raising the conflict militated against disqualification, especially since Jacobs & Barbone, the Wolfsons' counsel, had been involved in the prior litigation and should have been aware of any potential conflict. Regarding the subpoenas, plaintiffs maintained that the discovery sought was relevant and necessary, particularly given suspicions of impropriety surrounding the $1 deed transfer.

On September 16, 2025, the trial court denied defendants' motion to disqualify and to quash the subpoenas. In an oral decision, the trial court held that the 2016 conflict waiver applied in these circumstances because "there's always the potential that it might be necessary for the trustee to initiate litigation on behalf of the trust for whatever reason." The trial court further reasoned that the Wolfsons were defendants in the prior lawsuit; thus, there was "already an adversarial nature to the relationship potentially with regard to Mr. King's involvement in the event that it became necessary to sue." The trial court highlighted that the conflict issue had never previously been raised, despite the history of litigation between the parties.

Turning to the motion to quash, the trial court found that the $1 deed transfer of the Boardwalk property raised a suspicion of impropriety permitting further discovery into the relevant timeline of events prior to the sale. The trial

5

court was unpersuaded by defendants' arguments that producing records from 2006 or deposing certain fact witnesses would be overly burdensome. The trial court denied both motions in a September 16, 2025, order.

This appeal follows. Defendants raise the following contention for our consideration:

> NEITHER JOSEPH WOLFSON NOR RENEE WOLFSON PROVIDED THEIR INFORMED CONSENT CONFIRMED IN WRITING TO MR. KING REPRESENTING THE ALPERS AND THE ZELLS IN A LAWSUIT AGAINST THE WOLFSONS.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010).

Turning to substantive legal principles, "[f]undamentally, a lawyer owes his or her client the key responsibilities of confidentiality and loyalty." New Jersey Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 564 (App. Div. 2016). "From that duty 'issues the prohibition against representing clients with conflicting interests.'" Ibid. (quoting In re Op. No. 653 of the Advisory Comm. on Prof'l Ethics, 132 N.J. 124, 129 (1993)).

6

A-0737-25

RPC 1.9(a) concerns duties to former clients and provides:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

Disqualification pursuant to RPC 1.9(a) is imputed to the entire firm. See RPC 1.10(a) ("When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by . . . RPC 1.9.").

A motion to disqualify "should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers." Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 222 (1988). "[T]he initial burden of production—that the lawyer(s) for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former client—must be borne by the party seeking disqualification." Trupos, 201 N.J. at 462. "If that burden of production or of going-forward is met, the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they represented the former client are not the same or

7

substantially related to" the current matter. Id. at 462-63. "That said, the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it bears the burden of proving that disqualification is justified." Id. at 463 (internal quotation marks and citations omitted).

As our Supreme Court explained in Trupos,

> [M]atters are deemed to be 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [Id. at 467.]

"[W]hether the matters are the 'same or substantially related' must be based in fact, as [courts] have 'reject[ed] the appearance of impropriety as a factor to be considered in determining whether a prohibited conflict of interest exists under RPC . . . 1.9.'" Id. at 464 (third alteration in original) (quoting In re Supreme Ct. Advisory Comm. on Pro. Ethics Opinion No. 697, 188 N.J. 549, 562 n.5 (2006)).

"[I]f the prior and the subsequent matters are indeed the same, the representation, absent written consent of the former client, is prohibited." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 276 (2012).

A-0737-25

"In that circumstance, we need not conduct the inquiry into whether the matters are substantially related . . . [n]or need we apply the Trupos two-part test that includes the consideration of whether client confidences were communicated to the lawyer." Ibid.

"'In evaluating motions for the disqualification of counsel for an adversary pursuant to . . . RPC [1.9],' courts must 'balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel.'" Mauer v. State, 481 N.J. Super. 254, 262 (App. Div. 2025) (alteration in original) (quoting Twenty-First Century Rail Corp., 210 N.J. at 273-74). Although "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly," ibid. (quoting Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022)), "only in extraordinary cases should a client's right to counsel of his or her choice outweigh the need to maintain the highest standards of the profession." Dewey, 109 N.J. at 220. Accordingly, any "doubt must be resolved in favor of disqualification." Est. of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 451 (App. Div. 2016) (quoting Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996)). "[D]isqualification motions are, nevertheless,

9

viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019).

## III.

We next apply these general principles to the present matter. We have the benefit of the December 12, 2016, transcript of the conflict waiver hearing.[1] That transcript clearly evinces an informed waiver as contemplated by the Rules of Professional Conduct. Specifically, both King and defense counsel addressed the conflict issue at the hearing, explaining that King's former law firm—Ford, Flower & Hasbrouck—was co-counsel for defendants during the initial 2008 lawsuit. Defense counsel explicitly stated, "[F]or a period of close to a year Ford & Flower were the lawyers representing the defendants that Valerie had sued, directly adverse to her. So I want that very clear on the record." When asked whether he had any objection to King proceeding as trustee for the VBAT, Joseph Wolfson responded under oath that he did not. Defense counsel likewise raised no objections to King's appointment. The trial court described King as a "free agent" whose responsibility was to operate in the best interests of the trust.

---

[1] We granted plaintiff's motion to supplement the record with the transcript of the December 12, 2016 hearing.

We emphasize that defendants' argument that the 2016 waiver did not contemplate litigation between the parties is belied by the fact that those waivers were made in the course of litigation between the parties.

Furthermore, defendants have failed to demonstrate how any prior information learned can be used against them in the present action, or is material to the present litigation, considering King's role as trustee of the VBAT. In King's capacity as trustee, defendants are required to disclose confidential financial records to him pursuant to the court's October 29, 2021, order. Thus, any confidences King learned in the prior representation have effectively been subsumed by the required disclosures.

Moreover, the passage of time and the strategic advantage to be gained from disqualification militate in favor of denying disqualification at this late stage of the litigation. Cf. Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 609 (App. Div. 1990) (affirming denial of disqualification where the movant "unduly delayed raising the issue" despite being "aware of the facts relevant to the alleged conflict for several years"); Mazie, 460 N.J. Super. at 526 ("disqualification motions are . . . viewed skeptically in light of their potential abuse to secure tactical advantage").

11

In sum, defendants have not met their burden of demonstrating disqualification is warranted in these circumstances. See Trupos, 201 N.J. at 463 ("[T]he burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it bears the burden of proving that disqualification is justified.") (internal quotation marks and citations omitted).

IV.

We next address the motions to quash the subpoenas. Plaintiffs argue that the trial court did not abuse its discretion in denying defendants' motion to quash because they are entitled to the information sought. Defendants make no substantive arguments in response to that contention. Generally, an issue not briefed is deemed waived. See Drinker Biddle & Reath LLP v. New Jersey Dep't of L. & Pub. Safety, Div. of L., 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining that claims not addressed in the merits brief are considered "abandoned").

We add that appellate courts give "substantial deference to a trial court's disposition of a discovery dispute," Brugaletta v. Garcia, 234 N.J. 225, 240 (2018), and "will not ordinarily reverse a trial court's disposition on a discovery dispute 'absent an abuse of discretion or a judge's misunderstanding or misapplication of the law.'" Ibid. (quoting Cap. Health Sys., Inc. v. Horizon

12

Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)). The law is also well-settled that "New Jersey courts construe discovery rules 'liberally in favor of broad pretrial discovery.'" Alternative Glob. One, LLC v. Feingold, 479 N.J. Super. 593, 600 (App. Div. 2024) (quoting Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 463 (App. Div. 2023)). "Indeed, '[o]ur court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts.'" Lipsky, 474 N.J. Super. at 463 (quoting Jenkins v. Rainner, 69 N.J. 50, 56 (1976)).

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." R. 4:10-2. A party's discovery rights, however, "are not unlimited." Trenton Renewable Power, LLC v. Denali Water Sols., LLC, 470 N.J. Super. 218, 226 (App. Div. 2022) (quoting Piniero v. N.J. Div. of State Police, 404 N.J. Super. 194, 204 (App. Div. 2008)). "[T]o overcome the presumption in favor of discoverability, a party must show 'good cause' for withholding relevant discovery." Ibid. (quoting Capital Health, 230 N.J. at 80). Permissible discovery "may be limited by the court if it determines that the discovery sought is unreasonably cumulative or duplicative, or the burden or expense of the proposed discovery

outweighs its likely benefit." Horizon Blue Cross Blue Shield of New Jersey v. State, 425 N.J. Super. 1, 29 (App. Div. 2012).

In its oral decision, the trial court found that the $1 deed transfer of the Boardwalk property raised a suspicion of impropriety, permitting further discovery to establish the relevant timeline of events. The trial court was unpersuaded by defendants' arguments that producing records from 2006 or deposing certain fact witnesses would be overly burdensome.

We are satisfied that defendants have failed to establish that "good cause" exists for withholding the discovery sought. See Trenton Renewable Power, 470 N.J. Super. at 226 (quoting Capital Health, 230 N.J. at 80). On appeal, defendants do not argue that the information sought is overbroad, unduly burdensome, or not relevant; rather, they imply that since disqualification is proper, further discovery should not be exchanged. That argument is unpersuasive given our holding that disqualification is not warranted in these circumstances.

In sum, the trial court exercised sound discretion in denying defendants' motion, especially in light of New Jersey's liberal discovery policies. See Alternative Glob. One, LLC, 479 N.J. Super. at 600 (quoting Lipsky, 474 N.J. Super. at 463). To the extent we have not specifically addressed them, any

14

remaining arguments raised by defendants lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0737-25